## PEOPLE EX REL. JOHNSON V. GODDARD.

1. A charge that a judge, while a candidate for the position, agreed, for a valuable consideration, to appoint P. clerk of the court in case of his election, is not sustained by evidence of a suspicious loan of money to P. by W. for the use of the candidate, when both P. and the candidate testify that the former's only connection with the transaction was as surety for the latter.

2. A candidate for the office of district judge refused an offer of money for campaign purposes, made on condition that he appoint the party making it clerk of the court in case of his election, but, upon consultation with friends, who advised him that such party was a dangerous politician, and would do him much injury if he did not accept, executed a written promise to make such appointment, and gave it to a friend to deliver, charging him not to accept any money. The money was, however, tendered, and, acting upon the suggestion that the party still had it in his power to injure him, he accepted it, but returned it after the election. *Held* that, while the entire transaction had a very discreditable appearance, it did not warrant the disbarment of the candidate after his election. While an attack upon his professional character as a lawyer, not involving any professional engagement, it was in fact an indirect attack upon his character and standing as a judge, and that this was not an appropriate remedy for judicial misconduct.

3. A proceeding against a judicial officer, which, while nominally assailing his character as a lawyer, indirectly attacks his judicial character, and is instituted for the purpose of disgracing and injuring him in his official capacity, is a proceeding of questionable policy and dangerous tendency.

ORIGINAL proceedings by the people, at the relation of H. B. Johnson, for the disbarment of Luther M. Goddard.

Mr. H. B. JOHNSON, for plaintiffs.

Messrs. T. D. W. YONLEY, CLINTON REED, C. S. THOMAS and A. S. BLAKE, for respondent.

BECK, C. J.    The respondent in this case is judge of the district court of the fifth judicial district, having been elected to that office in November, 1882, and having qualified and entered upon the duties thereof about the 7th day of January, 1883. This petition as originally filed contained nineteen specifications; but all save the first five were stricken out on motion, for the reason that they related wholly to judicial acts of the respondent which are not cognizable in a proceeding of this character, its object being the investigation of charges of professional misconduct alleged to have been committed by

a member of the bar.   The remaining charges are to the effect that, when respondent was a candidate for his present judicial position, he made and entered into contracts with five different electors of Lake county, in said fifth judicial district, wherein and whereby he agreed to appoint each one of said electors clerk of the district court of Lake county in the event of his election, in consideration that they would severally vote for him as judge of said court, use all their influence to induce other electors to vote for him, expend certain sums of money in behalf of the respondent in said campaign, and advance certain other sums of money to the respondent to be used and expended by him in the said campaign.

In respect to the second, third and fourth specifications, we are of opinion, upon a full consideration of all the evidence produced in their support, as well as the evidence produced in behalf of the respondent, that these charges are not sufficiently proven, and shall therefore not notice them further.

Concerning the charge that respondent entered into a contract with J. H. Plater, whereby, for a valuable consideration, he agreed to appoint Plater clerk of said district court, the testimony produced by the respective parties is greatly in conflict.   The circumstances attending the alleged loan of money made by White to Plater for the use of the respondent, as the same are disclosed by the evidence, give to this transaction a suspicious appearance.   In view, however, of the positive testimony of both respondent and Plater, that it was merely a loan of money effected for the respondent, and that Plater's only connection therewith was as surety for the respondent, the charge that the transaction includes a sale of the clerk's office to Plater seems to be unwarranted.

The remaining specification to be considered is to the effect that respondent, on or about November 1, 1882, made and entered into a contract of the character above described with one John Marshall, an elector of said Lake

county, whereby he agreed, in the event of his election, to appoint said Marshall clerk of the district court of Lake county, in consideration that said Marshall should vote for said respondent, use all his influence to induce other electors to vote for him, pay to said respondent the sum of $500 to be expended by him for election purposes, and in further consideration that said Marshall would expend other sums of money in aid of respondent's election.    The testimony in relation to this charge discloses that the respondent, a few days prior to the election, executed and delivered to the witness Parsons, for Marshall, at Marshall's request, a written promise that in the event of his election he would appoint Marshall clerk of the district court of Lake county.    According to the testimony on part of the respondent, Marshall's application to be appointed clerk was accompanied by a proposition to loan the respondent $500 for campaign expenses, and to expend a like amount in the campaign himself, provided the respondent would obligate himself in writing to give him the said clerkship, if elected.    It seems to have been likewise accompanied by a threat to do him a great deal of harm if his proposition was rejected.    The matter appears to have been discussed by the respondent and his friends Parsons and Kellogg, who were candidates upon the same ticket with him.    According to the testimony, the respondent declined at first to entertain Marshall's proposition, saying he desired neither his money nor his influence.    But it being represented to the respondent, by Parsons and Kellogg, that Marshall was a dangerous politician, and was likely to combine with certain other persons of similar disposition to devise some fraudulent scheme by means of which the whole ticket might be defeated, he yielded to their advice, and drew up and signed an agreement as follows: "I hereby agree to appoint John C. Marshall clerk of the district court of Lake county in the event of my election. [Signed] L. M. Goddard."    This agreement was deposited with the wit-

ness Parsons, with instructions to receive no money from Marshall, the respondent denouncing the affair as "a po-litical hold-up," which would never do Marshall any good, since his appointment as clerk, in case of success in the election, would be for a nominal period of time only. Parsons showed the agreement to Marshall a few days prior to the election, who expressed himself satisfied with it.

It further appears that, about 5 o'clock in the after-noon of election day, Marshall handed a roll of money, containing $300, to Parsons, with a request to deliver it to the respondent; that respondent refused at first to re-ceive it, but, acting upon the suggestion of Parsons that Marshall still had it in his power to injure him, concluded to receive it, and hold it until the votes were counted. There is testimony that respondent offered to return the money to Marshall the next day after the election, but that the latter, learning that his appointment as clerk, if insisted upon, would be merely nominal, refused to ac-cept a return of the money at that time. It seems, how-ever, from the testimony, that the matter was compro-mised about a year afterwards, and the money returned, but that Marshall never was appointed clerk of said dis-trict court.

We are free to say that the respondent's explanation of the foregoing transaction is very unsatisfactory, and while it perhaps mitigates the wrong, in our judgment neither justifies nor excuses his conduct. The theory of the defense is that Marshall's support was not desired by the respondent, but fearing, as he claims, from the lat-ter's well-known reputation as a politician, that some fraudulent manipulation of the ballot-boxes might occur if he were not conciliated in some manner, which might result in the defeat of the respondent, and perhaps also the defeat of his friends (the witnesses Parsons and Kel-logg), the contract above set out was executed and depos-ited as stated, but was not regarded as obligatory, it hav-ing been executed under duress.

Anticipated frauds upon the ballot-box should have been met and defeated by other means than by a written promise to appoint the suspected or threatening person clerk of an important court; and this excuse, with the statement that it was not intended to perform the promise, lends to the entire transaction a very discreditable appearance.

We deem it unnecessary to discuss in detail the voluminous testimony taken and reported in this cause. It has received careful perusal and consideration, and it is our best judgment that it does not warrant the disbarment of the respondent. There are strong reasons in this case for giving the respondent the benefit of all reasonable doubts that arise. Nominally the proceeding is an attack upon his professional character as a lawyer, while in fact it involves no professional engagement as such, but reaches and affects his character and standing as a judge, a position to which the people have elected him, and if sustained would impair, if not destroy, his usefulness as an officer. When judges are guilty of misconduct or malfeasance in office, the appropriate remedy provided by the law is impeachment. If for any reason this direct remedy fails, the policy of resorting to an indirect remedy is very questionable, and the result likely to be unsatisfactory in any case. And while a precedent could only be deplored which should, even by inference, sanction or approve in a candidate for a judicial position the barter and sale of clerkships, placed by the law at his disposal, still more dangerous would be the precedent which would permit judicial character to be assailed indirectly, and judicial usefulness impaired, upon charges that the incumbent had been guilty of professional misconduct at the bar, prior to his elevation to the bench, and long prior to the institution of the prosecution. For the reasons assigned the petition is denied.

Elbert, J., concurs.

*Petition denied.*